IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LINDSEY BAGE, Individually and as the heir of KIRK ANDREW SWARTZ, and as representative of THE ESTATE OF KIRK ANDREW SWARTZ | § § § § § § § § | CIVIL ACTION NO. 3:20-cv-00307 |
| VS. | | |
| GALVESTON COUNTY et al. | | **Non-Dispositive Pretrial Matters** **Referred to Magistrate Judge Edison** |

**DEFENDANT GALVESTON COUNTY'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Galveston County files this reply in support of its Motion for Summary Judgment and would respectfully show the Court the following:

### I.  SUMMARY

1. The Court should grant Galveston County's Motion for Summary Judgment for the following reasons:

    (1) Plaintiff's Response provides no evidence establishing that she is Mr. Swartz's daughter.

    (2) Plaintiff's Response provides no evidence that Defendant Galveston County acted with deliberate indifference to Mr. Swartz.

    (3) Plaintiff's Response does not provide the specific proof required to prove up her failure-to-train claim.

    (4) Plaintiff's Response does not address Mr. Swartz's pre-existing condition, which more likely than not caused his death.

(5) Plaintiff's Response provides no evidence of an unlawful policy that contributed to Mr. Swartz's death.

## II.   ARGUMENT

**A.   Plaintiff has no standing to bring her Section 1983 claim because she has not provided any summary judgment evidence establishing that she is Mr. Swartz's daughter.**

2. Attempting to circumvent the clear fact that Plaintiff produced no evidence of her kinship with Mr. Swartz in the discovery process, Plaintiff attached new evidence, and put forth a new argument, that is insufficient to preclude summary judgment for lack of standing.

3. Plaintiff argues that "Mr. Swartz is presumed to be [her father] since he married her mother within months of her birth and held her out as his own child and ultimate heir." *See* Dkt. 88 at 21. This is a misstatement of the presumption of paternity as provided by the Texas Family Code. "Paternity can be established five ways in Texas: (1) **by showing paternity is statutorily presumed**; (2) through a formal adjudication of paternity; (3) by voluntarily filing an affidavit of paternity that complies with the statutory requirements; (4) adopting the child; or (5) consenting to a wife's use of assisted reproduction." *Turk v. Mangum*, 268 F. Supp. 3d 928, 932 (S.D. Tex. 2017) (internal citations omitted) (emphasis added).

4. In relevant part, Judge Hittner further explained the presumption of paternity under the Texas Family Code as follows:

> Paternity is presumed … if the father subsequently married the mother and voluntarily asserted paternity as consistent with the statutory requirements,

or if during the first two years of the child's life the father resided with the child and held out the child as his own.

*Id.* (internal citations omitted). While Plaintiff mistakenly conflates these two bases for presuming Mr. Swartz's paternity, an analysis of each basis shows that neither applies in this case.

5.  First, under the Family Code, "[a] man is presumed to be the father of a child if … he married the mother of the child after the birth of the child in apparent compliance with law, … he voluntarily asserted his paternity of the child, and … (A) the assertion is in a record filed with the vital statistics unit; (B) he is voluntarily named as the child's father on the child's birth certificate; or (C) he promised in a record to support the child as his own …." *See* Tex. Fam. Code § 160.204(a)(4).

6.  Here, there is **nothing** in the record that establishes that Plaintiff's mother married Mr. Swartz in accordance with Texas law. Danielle Bailey states in her declaration that "she married Kirk Andrew Swartz on Sept 15th, 1988" but she does not provide support for this statement. For example, Ms. Bailey provided no information regarding the county in which the alleged marriage occurred or if there are any witnesses of the alleged marriage (as required by law). *See* Dkt. 88-2. Notably, no marriage or divorce certificate has been provided. Further, Plaintiff has not provided a record that named Mr. Swartz as her father, let alone one that is filed with the vital statistics unit, so it can only be assumed that

there is no such record.[1] Moreover, Plaintiff has not provided her birth certificate so it can only be assumed that Mr. Swartz is not listed on it. Lastly, Plaintiff has not provided a record in which Mr. Swartz promised to support Plaintiff as his own child, so it can only be assumed that there is no such record.

7. Second, under the Family Code, "[a] man is presumed to be the father of a child if … during the first two years of the child's life, he **continuously** resided in the household in which the child resided and he represented to others that the child was his own." *See* Tex. Fam. Code § 160.204(a)(5).

8. Here, to prove that Mr. Swartz meets this presumption, Plaintiff attaches the declaration of Ms. Bailey that spoke in vague terms. For example, Ms. Bailey claims to have married Mr. Swartz "shortly after" Plaintiff's birth but does not establish when that happened or when Mr. Swartz started living with her and Plaintiff. *See* Dkt. 88-2. This is insufficient to establish that Mr. Swartz, during the first two years of the Plaintiff's life, continuously resided in the household in which the Plaintiff resided. Moreover, nothing in Ms. Bailey's declaration addresses whether Mr. Swartz "represented to others that [Plaintiff]

---

[1] "A valid acknowledgment of paternity filed with the vital statistics unit is the equivalent of an adjudication of the paternity of the child." Tex. Fam. Code § 160.305. And a "valid acknowledgment of paternity must: (1) be in a record; (2) be signed under the penalty of perjury by the mother and man seeking to establish paternity; (3) state whether there is a presumed father and that the child does not have another acknowledged or adjudicated father; (4) state whether genetic testing occurred and if the results are consistent with the claim of paternity; and (5) state the signatories understand an acknowledgment is equivalent to the judicial adjudication of paternity and is only challengeable in limited circumstances." *Turk*, 268 F. Supp. 3d at 933 (citing Tex. Fam. Code § 160.302(a)).

was his own" child. In fact, in the text messages that Plaintiff attached to her Response, Mr. Swartz's sister first claims to have "had no idea [Mr. Swartz] had a child." *See* Dkt. 88-1.

9. For these reasons, Plaintiff has no standing to bring her Section 1983 claim and the Court should grant summary judgment on Plaintiff's claims.

**B. Plaintiff's response provides no evidence that Defendant Galveston County acted with deliberate indifference to Mr. Swartz.**

10. As was more fully briefed in Defendant Galveston County's Motion for Summary Judgment, deliberate indifference is "an extremely high standard" and Plaintiff is required to submit evidence that the officials "refused to treat [Mr. Swartz], ignored [Mr. Swartz's] complaints, intentionally treated [Mr. Swartz] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

11. Here, outside of unsubstantiated claims that Mr. Swartz's brother requested medical help that was refused, Plaintiff offered **no evidence** that Defendant Galveston County refused to treat Mr. Swartz, ignored his complaints, or intentionally treated him incorrectly. Instead, throughout her response, Plaintiff complains of a delay in performing cardiopulmonary resuscitation ("CPR") and calling 9-11. For example, Plaintiff argues that "[i]t was obvious that Mr. Swartz was in distress and needed immediate medical attention, but the Defendants did not provide any adequate medical help **until it was too late**." *See* Dkt. 88 at p. 10 (emphasis added). Plaintiff further argues that the "**delay** of about 10

minutes just to place [Mr. Swartz] in a wheelchair … after Cardiopulmonary Arrest without CPR, more likely than not caused [Mr. Swartz's] death since he was revived with CPR even after being pulseless for over ten minutes." *Id.* at p. 14. *See also id.* at pp. 11 ("The course of events surrounding the response to Mr. Swartz's sudden unresponsiveness demonstrates a delay … of medical care for his serious medical needs resulting in his death.") and 19 ("unconstitutional delay and denial of care when he had a serious medical need since he was pulseless and unresponsive.").

12. These complaints do not rise to the level of deliberate indifference, which "exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). *See also Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) (explaining that a mere disagreement with medical treatment is not deliberate indifference). And precedent is clear: "a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm." *Cortez-Burlingame v. Galveston Cty.*, No. 3:18-CV-00183, 2020 U.S. Dist. LEXIS 75033, at *13 (S.D. Tex. 2020) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). In short, Plaintiff's response reaffirmed Defendant Galveston County's position: Plaintiff's complaint is not one of deliberate indifference, but one of (alleged) delayed medical treatment and (alleged) failure to diagnosis.[2]

---

[2] In fact, Plaintiff used the word delay 20 times in her response, which is almost once a page. The word denial and deny are (collectively) used 13 times, most of which are used in the same sentence as "delay".

13. For these reasons, and the reasons stated in Defendant Galveston County's Motion for Summary Judgment, no reasonable jury could conclude that Defendant Galveston County acted with deliberate indifference to Swartz and the Court should grant summary judgment on Plaintiff's claims.

C. **Plaintiff's Response does not provide the specific proof required to prove up her failure-to-train claim.**

14. Plaintiff bakes a failure-to-train argument into her claim for deliberate indifference and claims that all defendants "failed to train their subordinates on how to respond to a patient in medical distress with a serious medical need [and] the failure to train was the moving force behind the constitutional violation of Mr. Swartz's rights." *See* Dkt. 88 at p. 7.[3] The Supreme Court of the United States has made it clear that the culpability for depravation of rights is "at its **most tenuous** where a claim turns on a failure to train" and situations where a plaintiff might survive the dismissal stage are "limited." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added). There must be proof that the policymakers have actual or constructive notice that an absence of particular training is causing employees to violate constitutional right and applying a less stringent standard would result in de facto respondeat superior liability. *Id.* at 61-62. Generally, this requires a pattern of similar violations by untrained employees, because without notice that a course of training

---

[3] Plaintiff also claims that Sheriff Trochesset "is the final policymaker for the jail and law enforcement for the county. He adopted Boon-Chapman's policy to delay care policy. He is personally liable and deliberately indifferent to Swartz's serious medical needs." Dkt. 88 at p. 18. These claims are immaterial because Plaintiff's claims against Sheriff Trochesset were dismissed over eight months ago. *See* Dkt. 42.

is deficient, decision makers can hardly be said to have deliberately chosen a bad course of action. *Dewery v. Gautreaux*, 2019 U.S. Dist. LEXIS 20808, *15 (M.D. La., February 8, 2019).

15. It is important to note that evidence of other "bad" or "unwise" acts or results is not evidence of a pattern. *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009). Other incidents must be similar to the specific violations alleged because, otherwise, no knowledge can be gained. *Id.* at 62-63 (reasons for overturned cases varied from conduct complained about); *Kitchen v. Dallas Co.*, 759 F.3d 468, 484-85 (5th Cir. 2014) (conduct not demonstrated to be fairly similar).

16. Here, in an attempt to support her failure-to-train argument, Plaintiff lists several deaths without analyzing the circumstances around those deaths, which differ from the facts on hand. For example, two of the deaths Plaintiff lists were instantaneous and did not involve medical treatment in the Galveston County Jail. *See* Dkt. 88-8 at pp. 6 (describing a death caused by a head injury), 55-56 (describing a shooting death at the sight of an attempted arrest). Additionally, the custodial death reports do not speak to delays in calling 9-11 or performing CPR. *See generally*, Dkt. 88-8. Instead, outside of the two instantaneous deaths, Plaintiff's evidence actually speaks to Defendant Galveston County and the Medical Defendants having a history of providing medical care. *See, e.g., id.* at p. 25 ("On December 31, 2021 while in the recreation yard, the defendant collapsed to the ground. The defendant was treated by jail medical staff and subsequently transported to UTMB by EMS for further treatment.").

17. For these reasons, Plaintiff has not provided the specific proof required to prove up her failure-to-train claim and the Court should grant summary judgment on Plaintiff's claims.

**D. Plaintiff does not address Mr. Swartz's pre-existing condition, which more likely than not caused his death.**

18. Regardless of Plaintiff providing evidence of deliberate indifference or a failure-to-train, which she did not, Plaintiff's Section 1983 claim for Swartz's wrongful death would still fail because there is no evidence that Swartz had a greater than 50 percent chance of survival when he arrived at the Galveston County Jail. *See Slade v. City of Marshall*, 814 F.3d 263, 265 (5th Cir. 2016) (stating that a plaintiff "must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree."). *See also Phillips ex rel. Phillips v. Monroe Cty.*, 311 F.3d 369, 374 (5th Cir. 2002); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993).

19. Plaintiff does not address this argument except to conclusory argue that the "delay of about 10 minutes just to place [Mr. Swartz] in a wheelchair … after Cardiopulmonary Arrest without CPR, more likely than not caused [Mr. Swartz's] death since he was revived with CPR even after being pulseless for over ten minutes." *See* Dkt. 88 at p. 14. And as the Court knows, argument of counsel is not evidence.[4]

---

[4] This is especially true in the instant case, where Defendant Galveston County has provided the Court uncontested expert testimony that establishes that Mr. Swartz likely had MRSA pneumonia at the time of his arrest, which gave him a low chance of survival at the time he

20. Because Swartz had such a low chance of survival upon arriving at Galveston County Jail, Plaintiff cannot prove the causation necessary to support her claims and for these reasons, and the reasons stated in Defendant Galveston County's Motion for Summary Judgment, the Court should grant summary judgment on Plaintiff's claims.

E. **Plaintiff provides no evidence of an unlawful policy that contributed to Mr. Swartz's death.**

21. Plaintiff alludes to the existence of specific "policies" in her response but fails to prove up those policies and fails to show that they were the moving force behind Mr. Swartz's death.

22. Plaintiff's response is inundated with unsubstantiated claims and that is particularly true when Plaintiff argues that Defendant Galveston County has implemented unlawful policies. Plaintiff specifically argues, without evidence, that "the Defendants have a policy of not sending inmates for outside care until there is a critical need" and "have a policy requiring unauthorized medical staff to perform beyond their scope of practice to examine and diagnose patients." *See* Dkt. 88 at pp. 17. Plaintiff calls these **de facto** policies because they are unwritten. However, to prove these unwritten policies are in effect, Plaintiff would have to show that the policies are a "widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v.*

---

entered the jail because MRSA pneumonia has an extremely high mortality rate and requires early treatment, of which the possibility was hindered because Swartz was intoxicated at the time of his arrest.

*Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567,579 (5th Cir.2001)).

23. Plaintiff has failed to meet her burden because she offers **no evidence** showing how it is the defendants' common practice to "refus[e] to transport inmates for outside emergency care until they are in critical need of care" and to "allow[] individuals to perform beyond their scope of practice." *See* Dkt. 88 at p. 20. For example, Plaintiff does not specify which of the Medical Defendants' employees was performing beyond the scope of their practice during the timeline of Mr. Swartz's incarceration and release.[5] To the extent that Plaintiff is taking issue with anyone but a doctor evaluating Mr. Swartz, Plaintiff fails to mention that **all** the Medical Defendants' employees (including medical assistants and technicians) were trained to diagnose, evaluate, and ultimately perform CPR when it was necessary and safe to do so. *See* Dkt. 88-5 at p. 73 ("All of our staff are CPR certified.").

24. Moreover, even if Plaintiff proved up an unlawful policy, Plaintiff has not shown how those policies were the moving force behind Mr. Swartz's death. *See* Discussion, *supra*, Section I(D). *See also Estelle v. Gamble*, 429 U.S. 97, 107 (1972) (noting that the decision to provide additional medical treatment "is a classic example of a matter for medical judgment.").

---

[5] In that vein, Plaintiff's only complaint seems to be that Casey Flores is misidentified as a nurse in Deputy King's statement. This statement was not a medical record, like Plaintiff states, but an internal document that recorded Deputy King's statement of the events. Additionally, and more to the point, the fact that a medical assistant was misidentified by a deputy does not speak to someone performing "beyond their scope of practice".

### III.    REQUEST FOR RELIEF

FOR THESE REASONS, Defendant Galveston County asks the Cout to grant summary judgment on every claim brought by Plaintiff and award all other relief to which Defendant Galveston County may be justly entitled in law or in equity.

Respectfully submitted,

**MILLS SHIRLEY L.L.P**
2228 Mechanic St., Suite 400
Galveston, TX 77550
Phone: 409.761.4001

By: _____
    Robert E. Booth
ATTORNEY-IN-CHARGE
Texas Bar No. 24040546
SDTX Bar No. 36858
rbooth@millsshirley.com
    L. Jeth Jones, II
Texas Bar No. 24012927
SDTX Bar No. 36350
jjones@millsshirley.com
    Joshua A. Kelly
Texas Bar No. 24116605
SDTX Bar No. 3665821
jkelly@millsshirley.com

**ATTORNEYS FOR DEFENDANT GALVESTON COUNTY**

## CERTIFICATE OF SERVICE

By my signature below, I certify that I served a copy of the foregoing document on the following parties who have appeared in this case on March 16, 2022.

Plaintiff, Lindsey Bage, individually and as the heir of Kirk Andrew Swartz, and as representative of The Estate of Kirk Andrew Swartz, through attorneys of record:

> U.A. Lewis (myattorneyatlaw@gmail.com)
> Okwudili Onyekwelu (oonyekwelu@thelewislaw.com)
> **THE LEWIS LAW GROUP**
> P.O. Box 27353
> Houston, Texas 77227

Defendants, Dr. Garry Killyon, Boon-Chapman Administrators, Inc., Soluta, Inc. and Soluta Health, Inc., & Kathy White a/k/a Kathy Jean Jordan through attorneys of record:

> Christopher G. Rigler (crigler@thompsoncoe.com)
> Zandra Foley (zfoley@thompsoncoe.com)
> Cory S. Reed (creed@thompsoncoe.com)
> **THOMPSON, COE, COUSINS & IRONS, LLP**
> 700 N. Pearl St., 25th Floor
> Dallas, Texas 75201

Defendant Galveston County, through its attorneys of record:

> Robert E. Booth (rbooth@millsshirley.com)
> L. Jeth Jones, II (jjones@millsshirley.com)
> Joshua A. Kelly (jkelly@millsshirley.com)
> **MILLS SHIRLEY L.L.P.**
> 2228 Mechanic St., Ste 400
> Galveston, TX 77550